**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ILENE POSES,**<br>**LISA HAVER and**<br>**BARBARA DOWDALL,**<br>**Plaintiffs**<br>**v.**<br>**CITY OF PHILADELPHIA,**<br>**CARL W. HOLMES, JR.,**<br>**Individually and as a police officer for the City of Philadelphia,**<br>**OFFICER JOHN DOE(S),**<br>**Individually and as police officers for the City of Philadelphia**<br>**SCHOOL REFORM COMMISSION,**<br>**WILLIAM J. GREEN,**<br>**Individually and as Chairman of the School Reform Commission,**<br>**JOHN AUGUSTINE,**<br>**Individually and as School Police Administrator,**<br>**OFFICER RICHARD ROE(S),**<br>**Individually and as police officers for the School District of Philadelphia,**<br>**Defendants** | : **Civil Action No. 15-1213**<br>:<br>**JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>:<br>: |

**AMENDED COMPLAINT**
**Introduction**

1. Plaintiffs attended a public session of the School Reform Commission to observe the proceedings, peacefully communicate their support of public schools, and express opposition to the funding of additional charter schools in Philadelphia. While supporters of charter schools were permitted to express their viewpoint, the plaintiffs were not. Defendants confiscated small posters from the plaintiffs that contained messages of public importance, forcibly removed one of the plaintiffs, and directed others to leave the public meeting or be subject to arrest. Defendants thereby violated the plaintiffs' rights to free speech and assembly under the First Amendment. Plaintiffs seek damages, a declaratory judgment that the defendants' practices are

unconstitutional, and injunctive relief enjoining the defendants from further interference with the plaintiffs' First Amendment rights.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §1983. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(1), (3), (4) and the aforementioned statutory provision. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to adjudicate state law claims.

## PARTIES

3. Plaintiffs Ilene Poses, Lisa Haver and Barbara Dowdall are residents of Philadelphia, Pennsylvania, and at all times relevant to this action were in the Eastern District of Pennsylvania.

4. Defendant City of Philadelphia is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Police Department which employs defendants Carl Holmes and John Does(s).

5. Defendant Carl W. Holmes, Jr., is an employee of the Philadelphia Police Departments and is assigned as Chief Inspector of School Safety for the School District of Philadelphia. He is being sued in his supervisory and individual capacities.

6. Defendants John Doe(s) (hereinafter "the defendant PPD officers") are police officers for the Philadelphia Police Department (PPD) acting under color of state law. They are being sued in their individual capacities.

7. Defendant School Reform Commission (SRC) is a governmental entity under the laws of the Commonwealth of Pennsylvania and the City of Philadelphia that was established in 2001 to operate and administer the School District of Philadelphia. The SRC operates, manages,

directs and controls the Philadelphia School District (PSD) which employs defendants William J. Green, John Augustine and Richard Roe(s).

8. Defendant William J. Green is a member of the SRC and at the time of the incident that gave rise to the Complaint was the Chairman of the SRC acting under color of state law. He is being sued in his individual and official capacities.

9. Defendant John Augustine is the School Police Administrative Lieutenant for the School District of Philadelphia. He is being sued in his supervisory and individual capacities.

10. Defendants Richard Roe (s) (hereinafter "the defendant PSD officers") are police officers for the Philadelphia School District acting under color of state law. They are being sued in their individual capacities.

11. At all times relevant to this Complaint, all defendants acted in concert and conspiracy and under color of state law, and their actions and conduct deprived the plaintiffs of their constitutional and statutory rights.

**FACTUAL ALLEGATIONS**

12. The School Reform Commission has a long-standing policy and practice of conducting public sessions at the School District Education Center, 440 North Broad Street in Philadelphia. The sessions are generally open to members of the public so that interested individuals can express their viewpoints on issues of importance to public education.

13. At public sessions of the SRC prior to February 18, 2015, individuals in attendance were permitted to express their viewpoints through written messages contained on signs, posters and T-shirts. The messages pertained to issues impacting public school education.

14. For several years, one of the most contentious issues considered by the SRC is the

establishment and funding of charter schools in Philadelphia.

15. At SRC sessions, individuals in attendance generally include both supporters and opponents of charter schools.

16. On February 18, 2015, the School Reform Commission held a public session in the Auditorium at the School District Education Center, 440 North Broad Street in Philadelphia.

17. The sole purpose of the meeting was for the SRC to consider pending applications by thirty-nine charter schools for approval and funding.

18. Among the charter school applicants was KIPP, a national network that operates charter schools throughout the country.

19. Supporters of KIPP attended the meeting and were provided T-shirts displaying messages of support for the KIPP applications and charter schools. The T-shirts were worn by charter school supporters inside the SRC meeting room and in a nearby "overflow room."

20. Plaintiffs and others who opposed the funding of charter schools, including the KIPP schools, had small posters that contained messages in opposition to the funding of charter schools.

21. Plaintiffs were thus seeking to exercise their right to free speech, expression and assembly as guaranteed by the First Amendment, the same activities engaged in by the charter school supporters.

22. Without cause or justification, and at least in part in retaliation for the exercise of the plaintiffs' First Amendment rights and to chill the exercise of those rights, the defendants violated the plaintiffs' rights under the First, Fourth and Fourteenth Amendments.

**Plaintiff Ilene Poses**

23. Ms. Poses was inside the "spillover room" where she and other members of the public could watch on closed circuit television the SCR session taking place in the Auditorium.

24. There were KIPP supporters in the same "spillover room" wearing T-shirts that contained messages in support of charter school funding.

25. Ms. Poses had a 20" by 14" sign secured to the front of her body that was held in place by a string around her neck. The sign contained a message in opposition to the applications of the charter schools.

26. The sign held by Ms. Poses was displayed in such a manner as to not block anyone's view of the proceedings, and was no larger than the T-Shirts worn by the KIPP supporters.

27. At that time and place, without cause or justification, defendant Holmes and PPD officers John Doe(s) told Ms. Poses that she was not permitted to have the signs. PPD officers John Doe(s), acting in concert or conspiracy and/or at the direction of defendants Green and/or Holmes, then grabbed Ms. Poses, forcibly removed her from the School District Education Center, and told her not to attempt to re-enter the building upon threat of arrest.

28. Defendant PPD officers John Doe(s) used unreasonable and unnecessary force in removing Ms. Poses from the premises, causing bruising on her left arm and other injuries.

**Plaintiff Lisa Haver**

29. Ms. Haver was inside the auditorium prior to the start of the SRC session. She was holding a sign that displayed a message in opposition to charter school funding. While the sign was somewhat larger than the sign held by Ms. Poses, it was being held in a manner that did not block anyone's view of the proceedings.

30. There were KIPP supporters in the same room as Ms. Haver wearing T-shirts that contained messages in support of charter school funding.

31. At that time and place, without cause or justification, defendant John Augustine, the School District Administrative Lieutenant, snatched the sign from Ms. Haver and then reached into her bag and seized several other signs.

32. Shortly after the signed was taken, the SCR members entered the auditorium. Ms. Haver approached defendant William Green and asked why they were not being allowed to have signs. Defendant Green responded: "That's our policy tonight."

33. Ms. Haver later asked defendant Augustine to return her signs. Augustine told her that he had thrown out the signs.

**Plaintiff Barbara Dowdall**

34. Ms. Dowdall was in the "spillover room" holding a sign that displayed a message in opposition to charter school funding. While the sign was somewhat larger than the sign held by Ms. Poses, it was being held in a manner that did not block anyone's view of the proceedings.

35. At that time and place, without cause or justification, defendant Carl Holmes, Jr., Chief Inspector of School Safety for the School District and an employee of the Philadelphia Police Department, snatched the sign from Ms. Dowdall and ordered her to leave the building or be subject to arrest. Ms. Dowdall, fearing arrest, left the building.

36. At no time did the plaintiffs pose a threat of harm to the defendant officers or any other police officers or civilians.

37. Plaintiffs did not commit any offenses against the laws of the Commonwealth of Pennsylvania, the United States or the City of Philadelphia, or engage in any conduct which

justified the actions of all defendant.

38. As a result of defendants' actions and conduct, the plaintiffs were prevented from expressing viewpoints of great public interest in violation of the First Amendment.

39. Defendants' actions and conduct were intended to and did in fact retaliate against the plaintiffs for their exercise of the rights of free speech, expression and assembly in violation of the First Amendment.

40. The unlawful seizures and use of force in this case were the direct result of all defendants' decision to subject the plaintiffs to different treatment than others based on the content and/or viewpoint of their speech and expression in violation of the First Amendment.

41. The defendants' decision to prohibit the plaintiffs from expressing their viewpoints with messages contained on small posters or signs was not narrowly tailored to serve any governmental interest.

42. The defendants' decision to prohibit the expression of viewpoints with messages contained on small posters or signs did not leave open ample alternative channels for communication of information by the plaintiffs and others.

43. The meeting of the SRC in the Auditorium and "spillover room" was conducted in a place that has traditionally been open for free speech activities.

44. For many years prior to the session on February 18, 2015, members of the public attended sessions of the SRC and were permitted to carry or display signs that contained messages relating to issues of public importance.

45. The defendants acted intentionally, knowingly, recklessly, willfully, deliberately, maliciously and/or with reckless disregard of the plaintiffs' constitutional and statutory rights.

46. As a direct and proximate result of the actions of all defendants, the plaintiffs suffered and continue to suffer harms and violations of their civil rights.

47. By their actions, conduct, policies and/or practices, all defendants violated the plaintiffs' constitutional rights by interfering with and/or retaliating against the plaintiffs for the exercise of their First Amendment rights to free speech, expression and assembly and/or to chill the free exercise of those rights, by subjecting the plaintiffs to unlawful searches and seizures, and, as to plaintiff Poses, by subjecting her to unreasonable force and unlawful detention.

## FIRST CAUSE OF ACTION
## FEDERAL CIVIL RIGHTS VIOLATIONS

48. Plaintiffs incorporate by reference paragraphs 1-47 of the instant Complaint.

49. As a direct and proximate result of all defendants' conduct, acting alone and/or in concert and conspiracy and under color of state law, all plaintiffs were deprived of their rights to free speech, expression and assembly, and to be secure in one's person and property. Plaintiff Poses was also denied her right to be free from the unreasonable use of force, unlawful arrest and detention. As a result, the plaintiffs suffered and continue to suffer harm in violation of their rights under the laws and Constitution of the United States, in particular the First, Fourth and Fourteenth Amendments, and 42 U.S.C. §1983.

50. As a direct and proximate result of the acts of all defendants, the plaintiffs sustained injuries, harms, and/or loss of liberty, all to their detriment and harm.

51. Defendant City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more

or different training, supervision, investigation or discipline in the areas of:

a. The proper exercise of police powers, including but not limited to improper searches and seizures, the unreasonable use of force, unlawful arrest and unlawful detention in retaliation for the exercise of First Amendment rights, to chill the free exercise of those rights, and/or other federally guaranteed constitutional rights;

b. The failure of police officers to follow established policies, procedures, directives and instructions regarding searches, seizures, the use of force and arrest powers under such circumstances as presented in this case;

c. The proper exercise of police powers, including but not limited to the unreasonable use of force, unlawful search and unlawful detention;

d. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

e. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct, including but not limited to defendant Holmes who had a documented history of misconduct complaints and abuse of authority;

f. Police officers' use of their status as police officers to employ the use of force and unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties;

g. The refusal of police officers to intervene when other officers violate the rights of citizens in their presence; and

h. The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

52. Defendant City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia police, including the defendant officers in this case, to violate the rights of citizens such as the plaintiffs.

53. Defendant City of Philadelphia is deliberately indifferent to the need to train,

supervise and discipline police officers. The Internal Affairs Division (IAD) of the Philadelphia Police Department (PPD) fails to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

a. There are excessive and chronic delays in resolving disciplinary complaints;

b. There is a lack of consistent, rational and meaningful disciplinary and remedial actions;

c. There is a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct;

d. The PPD's internal investigatory process has fallen below accepted practices and is arbitrary and inconsistent;

e. The PPD discipline, as practiced, is incident based rather than progressive. Thus, repeat violators are not being penalized in proportion to the number of violations;

f. The conduct of IAD investigations demonstrates that PPD internal affairs personnel are not adequately trained and supervised in the proper conduct of such investigations;

g. A global analysis of IAD's investigatory procedures indicates a pattern of administrative conduct where the benefit of the doubt is given to the officer rather than the complainant;

h. There are serious deficiencies in the quality of IAD investigations and the validity of the IAD findings and conclusions;

i. The PPD lacks an effective early warning system to identify, track and monitor "problem" officers;

j. IAD frequently fails to interview available eyewitnesses to incidents involving citizen complaints of misconduct. The interviews that are conducted by IAD are below acceptable standards of police practice and fail to address key issues in the cases; and

k. IAD fails to acknowledge the disproportionate and extreme use of force used by police officers in the investigation of citizen complaints and fails to properly categorize the police officers' misconduct in those cases as an impermissible use of force.

54. Defendant School Reform Commission has encouraged, tolerated, ratified and has

been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

a. The proper exercise of police powers, including but not limited to improper searches and seizures, the unreasonable use of force, unlawful arrest and unlawful detention in retaliation for the exercise of First Amendment rights, to chill the free exercise of those rights, and/or other federally guaranteed constitutional rights;

b. The failure of police officers and officials to follow established policies, procedures, directives and instructions regarding searches, seizures, and the use of force under such circumstances as presented in this case;

c. The proper exercise of police powers, including but not limited to improper searches and seizures, the unreasonable use of force, and unlawful detention in retaliation for the exercise of First Amendment rights, to chill the free exercise of those rights, and/or other federally guaranteed constitutional rights; and

d. The hiring, assignment and/or monitoring of officers whom it knew or should have known had a history of misconduct or abuse of authority or were suffering from emotional and/or psychological problems that impaired their ability to function as officers.

55. As a final policy-maker for the SRC, the decision by defendant Green, without cause or justification, to revoke the long-established policy and practice of permitting the use of signs and posters by members of the public in attendance at SRC sessions violated the First Amendment and was a significant factor in causing the harms suffered by the plaintiffs.

56. Defendants have by the above described actions deprived the plaintiffs of rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983.

**SECOND CAUSE OF ACTION**
**SUPPLEMENTAL STATE CLAIMS**

57. Plaintiff incorporates by reference paragraphs 1-56 of the instant Complaint.

58. The acts and conduct of defendants Carl Holmes and John Doe(s), undertaken alone

and/or in concert and conspiracy, constitute assault and battery, and false arrest/false imprisonment as to plaintiff Ilene Poses, under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

WHEREFORE, the plaintiffs request the following relief:

a. Compensatory damages as to all defendants;

b. Punitive damages as to the individual defendants;

c. Reasonable attorney's fees and costs as to all defendants;

d. A judgment declaring that the defendants' policy and practice of interfering with the plaintiffs' exercise of their right to free speech, expression and assembly under the First Amendment to the United States Constitution is unconstitutional;

e. Enjoin the defendants from interfering with the plaintiffs' exercise of their right to free speech, expression and assembly under the First Amendment to the United States Constitution; and

f. A jury trial as to each defendant and as to each count.

S/ Paul Messing
Paul Messing
Attorney ID No. 17749
KAIRYS, RUDOVSKY, MESSING & FEINBERG
718 Arch Street, Suite 501S
Philadelphia, Pa. 19106
(215) 925-4400
Counsel for Plaintiffs